[619 NYS2d 790]

In the Matter of AUDREY A. VROOMAN, Respondent, v GEORGE DENTES, as District Attorney of Tompkins County, Respondent. DEBRA L. DENNETT, Appellant.

Third Department, November 23, 1994

APPEARANCES OF COUNSEL

*Williamson, Clune & Stevens,* Ithaca *(John H. Hanrahan* of counsel), for appellant.

*Grossman, Kinney, Dwyer & Harrigan, P. C.,* East Syracuse *(Harris Lindenfield* of counsel), for Audrey A. Vrooman, respondent.

## OPINION OF THE COURT

MERCURE, J.

Homicide charges were brought against Debra L. Dennett in connection with the death of her husband, Nathaniel Knappen. During the pendency of the criminal action, the Tompkins County Department of Social Services (hereinafter DSS) instituted a paternity proceeding in Family Court, seeking a declaration that Knappen was the father of a child born to petitioner following Knappen's death. In the course of that proceeding, Family Court ordered blood-grouping tests and at DSS' request respondent released samples of Knappen's blood for testing. Those samples proved unsuitable, however, and DSS made a further request, this time for samples of Knappen's blood-stained clothing or tissue fluids. Respondent refused the request, citing his obligation to preserve existing evidence during the pendency of a criminal action. The criminal action against Dennett came on for trial in the summer of 1991 and the jury returned a verdict of not guilty. DSS then renewed its request for "physical evidence and/or blood, tissue, or fluid samples for testing purposes". Respondent advised DSS that all records and evidence related to the criminal action were sealed pursuant to CPL 160.50 and that he could not permit disclosure of the materials absent a court order. Ultimately, petitioner requested that respondent move pursuant to CPL 160.50 (1) (d) (ii) to unseal the criminal record and make DNA samples available to her for use in the paternity proceeding. Upon respondent's refusal, petitioner brought this CPLR article 78 proceeding seeking judgment directing pro-

duction of the materials. Supreme Court granted the petition (159 Misc 2d 966) and Dennett appeals.

There should be an affirmance. Although we do not subscribe to Supreme Court's conclusion that it had "inherent authority" to unseal the record of the criminal action against Dennett *(see, Matter of Joseph M. [New York City Bd. of Educ.],* 82 NY2d 128), for reasons similar to those expressed by Supreme Court, we conclude that the requested materials do not fall within the ambit of CPL 160.50 and are thus available to petitioner.

CPL 160.50 requires that, upon the termination of a criminal action or proceeding in favor of the accused, all photographs, photographic plates, palmprints and fingerprints be returned to the defendant or her attorney (CPL 160.50 [1] [a], [b]) and "all official records and papers, including judgments and orders of a court * * * relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency" (CPL 160.50 [1] [c]). The well-recognized purpose for the statutory provision is "to ensure that the protections provided to exonerated accuseds be 'consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law' " *(Matter of Joseph M. [New York City Bd. of Educ.], supra,* at 131, quoting Governor's Approval Mem, 1976 McKinney's Session Laws of NY, at 2451). "Indeed, the over-all scheme of the enactments demonstrates that the legislative objective was to remove any 'stigma' flowing from an accusation of criminal conduct terminated in favor of the accused, thereby affording protection (i.e., the presumption of innocence) to such accused in the pursuit of employment, education, professional licensing and insurance opportunities" *(People v Patterson,* 78 NY2d 711, 716; *see, Matter of Hynes v Karassik,* 47 NY2d 659, 662-663; *Matter of Anonymous,* 95 AD2d 763).

While few cases have defined the breadth of the language "official records and papers * * * relating to the arrest or prosecution" contained in CPL 160.50 (1) (c) *(but see, Matter of Dondi,* 63 NY2d 331, 337-338; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 160.50, at 713-714), a proper recognition of the purpose underlying the

legislation strongly opposes an interpretation that would encompass forensic evidence collected prior to the institution of any criminal proceeding and having no probative value except with regard to the cause of the victim's death and the manner in which it was inflicted *(see generally,* Public Health Law § 4210). Obviously, samples of Knappen's own tissue, blood and other fluids, taken from his body and his clothes and collected in connection with the investigation of his violent death, have no bearing on the identity of his assailant and cannot stigmatize Dennett. They have no relevance to the question of her guilt or innocence, are by no means testimonial in nature *(cf., Matter of Dondi, supra),* and are not proposed to be used against Dennett in any real sense. In fact, on this record, we have no idea whether the materials sought by petitioner were even delivered to respondent and, if so, whether they were marked as exhibits or offered or received in evidence at Dennett's trial *(see, Matter of Anonymous, supra,* at 764; *Matter of Hynes v Karassik,* 63 AD2d 597, *affd* 47 NY2d 659, *supra).*

For the foregoing reasons, we conclude that County Court's sealing order did not encompass the materials sought by petitioner and that CPL 160.50 does not prevent their production. In our view, Dennett's employment of CPL 160.50 in an effort to prevent a determination of paternity (and, perhaps more to the point, heirship), for her own pecuniary benefit and in a Family Court proceeding that is wholly unrelated to her involvement in any wrongdoing, perverts the Legislature's salutary intent and should not be countenanced. The interest of petitioner, the child and the public in determining paternity and providing for proper support is directly and negatively impacted by this procedural ploy *(see, Matter of L. Pamela P. v Frank S.,* 59 NY2d 1, 5).

CARDONA, P. J., WHITE and PETERS, JJ., concur.

Ordered that the judgment is affirmed, with costs.